UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CARRIAGE ROW OWNERS ASSOCIATION, a Washington non-profit corporation,<br><br>     Plaintiff,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY, a California company, NATIONAL SURETY CORPORATION, an Illinois corporation, AFFILIATED FM INSURANCE COMPANY, a Rhode Island company, and DOE INSURANCE COMPANIES 1–10,<br><br>     Defendants. | NO. 2:17-cv-898<br><br>**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, AND CPA VIOLATIONS**<br><br>**JURY DEMAND** |

  Plaintiff Carriage Row Owners Association (the "Association") alleges as follows:

### I. INTRODUCTION

1.1 This is an action for declaratory judgment, seeking:

 (A) A declaration of the rights, duties and liabilities of the parties with respect to certain controverted issues under insurance policies issued to the Association.

 (B) Monetary damages for breach of contract and bad faith.

 (C) CPA penalties of up to $25,000 per violation.

 (D) Attorneys' fees (including expert witness fees) and costs.

 (E) Any other relief the Court deems just and equitable.

COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, AND CPA VIOLATIONS - 1

STEIN, SUDWEEKS & HOUSER, PLLC
2701 1ST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660   FAX 206.286.2660

## II.  PARTIES AND INSURANCE CONTRACTS

2.1  <u>The Association</u>. The Association is a nonprofit corporation organized under the laws of the state of Washington with its principal place of business located in Kent, Washington. The Association has the duty to maintain the common elements and any limited common elements of the Carriage Row Condominium Complex for the common enjoyment of the unit owners. The Carriage Row Condominium Complex consists of seven (7) residential buildings with a total of sixty-two (62) units, located at 27004, 27012, 27015, 27022, 27023, 27030, and 27031 47th Avenue South, Kent, Washington 98023.

2.2  <u>Fireman's Fund.</u> Fireman's Fund Insurance Company ("Fireman's Fund") is a company organized under the laws of California with its principal place of business in Illinois. On information and belief, Fireman's Fund sold insurance policies to the Association, including Policy Nos. DXX 80742089 (in effect from August 19, 1999 to August 19, 2000), DXX 80766338 (in effect from August 19, 2000 to August 19, 2001), DXX 80787240 (in effect from August 19, 2001 to August 19, 2002), and MXX 80803798 (in effect from August 19, 2002 to August 19, 2003). On information and belief, the Fireman's Fund policies identify the Carriage Row Condominium Complex as covered property.

2.3  <u>National Surety</u>.  National Surety Corporation ("National Surety") is a corporation organized under the laws of Illinois with its principal place of business in Illinois. On information and belief, National Surety sold insurance policies to the Association, including Policy Nos. MXX 80814413 (in effect from August 19, 2003 to August 19, 2004), MXX 80832068 (in effect from August 19, 2004 to August 19, 2005), MXX 80847013 (in effect from August 19, 2005 to August 19, 2006), and MXX 80862459 (in effect from August 19, 2006 to August 19, 2007). On information and belief, the National Surety policies identify the Carriage Row Condominium Complex as covered property.

2.4  <u>FFIC.</u> Fireman's Fund and National Surety will hereinafter be referred to as "FFIC."

2.5     **Affiliated FM.** Affiliated FM Insurance Company is a company organized under the laws of Rhode Island with its principal place of business in Rhode Island. On information and belief, Affiliated FM sold insurance policies to the Association, including Policy Nos. TV193 (in effect from August 19, 1999 to August 19, 2000) and TV352 (in effect from August 19, 2000 to August 19, 2001). On information and belief, the Affiliated FM policies identify the Carriage Row Condominium Complex as covered property.

2.6     **Doe Insurance Companies 1–10.** Doe Insurance Companies 1–10 are currently unidentified entities who, on information and belief, sold insurance policies to the Association that identify the Carriage Row Condominium Complex as covered property.

2.7     **Carriage Row Insurers.** Fireman's Fund Insurance Company, National Surety Corporation, Affiliated FM Insurance Company, and Doe Insurance Companies 1–10 shall be collectively referred to as the "Carriage Row Insurers."

2.8     **Carriage Row Policies.** The policies issued to the Association by the Carriage Row Insurers shall be collectively referred to as the "Carriage Row Policies."

### III.     JURISDICTION AND VENUE

3.1     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

3.2     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as the Carriage Row Insurers marketed and sold insurance to the Association in King County; a substantial part of the events giving rise to the claim including the breach of contract occurred in King County; and the insured condominium building is located in King County.

## IV.   FACTS

4.1   <u>Incorporation by Reference</u>. The Association re-alleges the allegations of paragraphs 1.1 through 3.2, above, as if fully set forth herein.

4.2   <u>Evolution Initial Investigation.</u>  On June 6, 2016, Evolution Architecture ("Evolution") issued a report based on a limited intrusive investigation of the Carriage Row Condominium Complex. Evolution's investigation was limited to nine (9) investigative openings in the building envelope.  Hidden water damage was observed at nine of nine openings made.

4.3   <u>Tender to FFIC.</u>  On June 30, 2016, the Association tendered to FFIC. In its tender letter, the Association requested that FFIC investigate for any other hidden damage or collapse conditions that may exist at the Carriage Row Condominium Complex. After the claim was tendered, FFIC entered into a tolling agreement with the Association, pausing the contractual suit limitation period during its investigation. Shortly before this lawsuit was filed, FFIC informed the Association that it would not extend the tolling agreement.

4.4   <u>Tender to Affiliated FM.</u>  On June 29, 2016, the Association tendered to Affiliated FM. In its tender letter, the Association requested that Affiliated FM investigate for any other hidden damage or collapse conditions that may exist at the Carriage Row Condominium Complex. Affiliated FM has refused to enter into a tolling agreement with the Association.

4.5   <u>Joint Intrusive Investigation.</u>  The Association conducted a follow-up joint intrusive investigation with its insurers on October 10–11, 2016. During the investigation, twenty-six (26) openings were made at the Carriage Row Condominiums.  Hidden water damage was found at twenty-four (24) of twenty-six (26) openings made.

4.6   <u>Evolution Findings Report.</u>  On December 15, 2016, Evolution issued a Building Envelope Investigation Findings Report.  Evolution concluded that the hidden damage identified at the Carriage Row Condominium Complex was caused by a combination of wind-driven rain and inadequate construction. The primary cause of the hidden water damage was wind driven rain events. Furthermore, Evolution concluded that:

The hidden damage at the Carriage Row Condominiums has thus occurred incrementally and progressively each year from 1983 as a result of wind-driven rain events. During each storm event since 1983, precipitation driven onto the face of the exterior walls has penetrated the cladding causing hidden damage to the sheathing and framing.

4.7   Substantial Impairment of Structural Integrity ("SSI"). During the investigation, the Association's consultant, Kris Eggert of Evolution Architecture, observed several locations that potentially required shoring.   Dibble Engineers, Inc. ("Dibble") was contacted regarding these locations.  After a site visit, Dibble recommended that temporary shoring be provided to support the deck joists at two locations. On November 17, 2016, the insurers were advised that Dibble recommended temporary shoring at two locations. The insurers were also advised of the cost per insurer to shore the identified locations.   In its report, JRP Engineering ("JRP"), on behalf of insurer State Farm, found that the two locations identified by Dibble were severely decayed at the "outer exterior wall corners at the decks . . . rim joist, wall plates and corner studs at deck level and extending down into the basement floor wall below the deck . . . ." Furthermore, FFIC agreed that the decks identified by Dibble likely require temporary shoring. However, neither FFIC nor Affiliated FM has paid for the temporary shoring as recommended by Dibble.

4.8   FFIC's Claim Decision. On March 28, 2017 FFIC denied the Association's claim, approximately nine months after the Association tendered its claim to FFIC.

4.9   Affiliated FM's Claim Decision. Although the Association tendered to Affiliated FM nearly one year ago, Affiliated FM has not yet issued a coverage determination regarding the Association's claim for hidden damage caused by wind-driven rain.

V.   **FIRST CLAIM: DECLARATORY RELIEF THAT THE CARRIAGE ROW POLICIES PROVIDE COVERAGE**

5.1   Incorporation by Reference. The Association re-alleges and incorporates by reference the allegations of paragraphs 1.1 through 4.9 above, as if fully set forth herein.

5.2   Declaratory Relief.  The Association seeks declaratory relief from the Court in the form of determinations regarding the following disputed issues:

COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, AND CPA VIOLATIONS - 5

STEIN, SUDWEEKS & HOUSER, PLLC
2701 1ST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660   FAX 206.286.2660

a. The Carriage Row Policies are all-risk policies covering every risk, peril, cause, and loss not excluded. No exclusions, conditions, or limitations bar coverage under the Carriage Row Insurance Policies for the damage to the Carriage Row Condominium Complex.

b. As a result, the Carriage Row Policies cover the cost of repairing the damage to the Carriage Row Condominium Complex.

## VI.   SECOND CLAIM: AGAINST FFIC FOR BREACH OF CONTRACT

6.1   <u>Incorporation by Reference</u>. The Association re-alleges and incorporates by reference the allegations of paragraphs 1.1 through 6.2, above, as if fully set forth herein.

6.2   <u>Contractual Duties.</u> FFIC has contractual duties under the terms of its respective policy and/or policies to pay the cost of repairing the covered damage to the Carriage Row Condominium Complex.

6.3   <u>Breach of Contract.</u> FFIC has failed to fulfill its contractual obligations to the Association.

6.4   <u>Damages.</u> As a direct and proximate result of FFIC's breach of its insurance contract, the Association has been deprived of the benefits of its insurance coverage in an amount to be proven at trial.

6.5   <u>Additional Damages.</u>  As a direct and proximate result of FFIC's breach of its insurance contract, the Association has been forced to incur attorneys' fees, expert costs, investigation costs, and other expenses in order to prosecute this action, the sole purpose of which is to obtain the benefits of the Association's insurance contracts.

## VII.   THIRD CLAIM: AGAINST THE CARRIAGE ROW INSURERS FOR INSURANCE BAD FAITH

7.1   The Association re-alleges and incorporates by reference paragraphs 1.1 through 6.5, above, as if fully set forth herein.

7.2   A violation, if any, of one or more of the Washington claim handling standards set forth below is a breach of the duty of good faith, an unfair method of competition, an unfair or deceptive act or practice in the business of insurance, and a breach of the insurance contract. The Carriage Row insurers violated Washington claim handling standards by:

- Failing to complete an investigation as soon as reasonably possible.
- Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.
- Refusing to pay claims without conducting a reasonable investigation; and
- Failing to promptly provide a reasonable explanation of the basis for the denial of a claim.

7.3    As part of the premium that it paid to its insurers, the Association was entitled to a prompt and reasonable investigation for hidden damage even if the investigation would be difficult and expensive. The Carriage Row Insurers' failure to investigate and make a timely claim decision violated Washington claim handling standards:

- Which require them to adopt and implement reasonable standards for the investigation of claims;
- Which require a reasonable investigation;
- Which require a prompt investigation; and
- Which require insurers to be impartial and to treat the interests of the insured as equal to their own interests, without placing too much emphasis on the insurer's interests.

7.4    In its denial letter, FFIC failed to acknowledge that weather conditions such as rain or wind-driven rain are covered causes of loss under its policy. Instead, FFIC made no decision as to whether or not water damage caused in part by weather conditions would be covered. Yet, FFIC denied coverage for any and all hidden damage at Carriage Row. FFIC's conduct violated Washington claim handling standards:

- Which require it to fully disclose all pertinent coverages;
- Which prohibit misrepresentations regarding relevant facts (e.g. the causes of damage) or coverage;
- Which require it to construe ambiguities in facts, law, or policy language in favor of coverage;

- Which prohibit the practice of refusing to pay claims without conducting a reasonable investigation;
- Which require FFIC and its adjusters, and independent adjusters, to be impartial and to treat the interests of its insured as equal to its own without placing too much emphasis on FFIC's interests; and
- Which require FFIC to provide a reasonable explanation of the relevant facts, law, and policy language and how its policy language supported a denial of the Association's claim.

7.5    The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. RCW 48.01.030. An insurer has a duty to act in good faith. This duty requires an insurer to deal fairly with its insured. The insurer must give equal consideration to its insured's interests and its own interests, and must not engage in any action that demonstrates a greater concern for its own financial interests than its insured's financial risk. An insurer who does not deal fairly with its insured, or who does not give equal consideration to its insured's interests, fails to act in good faith. *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 470, 78 P.3d 1266 (2003).

7.6    The duty of good faith requires an insurer to conduct a reasonable investigation before refusing to pay a claim submitted by its insured. An insurer must also have a reasonable justification before refusing to pay a claim. An insurer who refuses to pay a claim, without conducting a reasonable investigation or without having reasonable justification, fails to act in good faith. *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 961 P.2d 933 (1998) (property insurer may be liable for bad faith investigation into coverage issues even if coverage was properly denied); *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 792 P.2d 520 (1990).

7.7    A violation, if any, of one or more of the Washington claim handling standards described in paragraphs 7.2 through 7.4 above is a breach of the duty of good faith.

7.8 Affiliated FM breached its duty of good faith to the Association by unreasonably failing to complete its investigation in a timely manner and failing to make a prompt claim decision.

7.9 FFIC breached its duty of good faith to the Association by unreasonably failing to complete its investigation in a timely manner and by failing to acknowledge that the damage found at the Carriage Row Condominium Complex was caused in part by weather conditions such as wind-driven rain, that its policies cover damage caused by any combination of weather conditions and inadequate construction, and that courts interpreting Washington law and similar policy language have found coverage for similar damage. Therefore, FFIC violated WAC 284-30-330(13) and breached its duty of good faith by failing to provide a reasonable explanation regarding how its policy language supports a denial of the Association's claim.

7.10 As a direct and proximate result of the Carriage Row Insurers' breach of their respective duties of good faith the Association has been damaged in an amount to be proven at trial.

## VII. FIFTH CLAIM: AGAINST THE CARRIAGE ROW INSURERS FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT

8.1 The Association re-alleges and incorporates by reference paragraphs 1.1 through 7.10, above, as if fully set forth herein.

8.2 Violations of WAC claims handling standards are per se CPA violations. The Carriage Row Insurers' conduct was deceptive, impacted the public, and had the capacity to deceive. The Association is a consumer. As a direct and proximate result of the Carriage Row Insurers' CPA violations, the Association has been damaged in an amount to be proven at trial. The Association is entitled to damages, CPA penalties of up to $25,000 per violation, and attorneys' fees under the CPA.

## IX. PRAYER FOR RELIEF

WHEREFORE, the Association prays for judgment as follows:

9.1 Declaratory Judgment Regarding Coverage. A declaratory judgment that the Carriage Row Policies provide coverage as described herein.

STEIN, SUDWEEKS & HOUSER, PLLC
2701 1ST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

9.2     Money Damages. For money damages in an amount to be proven at trial.

9.3     Attorneys' Fees and Costs of Suit. For reasonable attorneys' fees (including expert fees). See *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991) and RCW 48.30.015.

9.4     CPA Penalties.  For CPA Penalties of up to $25,000 per violation.

9.5     Other Relief.  For such other and further relief as the Court deems just and equitable.

### X.     DEMAND FOR JURY TRIAL

10.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Association demands trial by jury in this action of all issues so triable.

DATED this 9th day of June, 2017.

STEIN, SUDWEEKS & HOUSER, PLLC

*/s/ Daniel Houser*
*/s/ Justin Sudweeks*
*/s/ Jessica Burns*
Daniel Houser, WSBA 32327
Justin Sudweeks, WSBA 28755
Jessica Burns, WSBA 49852
Attorneys for Plaintiff
2701 First Avenue, Suite 430
Seattle, WA 98121
Email: dhouser@condodefects.com
Email: jessica@condodefects.com
Telephone: (206) 388-0660
Facsimile: (206) 286-2660